Whenever you're ready. May it please the court. Ann Saucer, hoping to reserve four minutes for rebuttal. I am plaintiff's counsel in case number 15-55885. The plaintiffs in this case are borrowers who brought this suit against a loan service or Ocwen over systemic unauthorized charges that Ocwen has placed on the plaintiff's mortgage accounts. Why were they unauthorized? They're unauthorized because the mortgage documents at paragraph 9 specifically state that the only way that these fees could be placed on borrower's accounts is if they are reasonable or appropriate to protect the lender's interest. Right, but this is not a contract claim. That's correct, Your Honor. Because you have no contractual relationship with the defendants. That's correct. It's a claim for RICO, the Rosenthal Act, UCL, unjust enrichment and tort claim. Here, Your Honor, it's fraudulent intent, which we have plausibly pled, as initially found by the district court. You know, I think, I think there could be a fraud under these circumstances. I, I agree, but I just really question about this case. It's not a situation where they were sneakily identifying these charges on the monthly statement, right? That's not what you're alleging that they were... They were calling it something else. They weren't committing fraud by pretending that was a, you know, some other kind of a fee, right? That's correct. Not in this case. And they weren't charging an exorbitant sum for these inspections, by any means. Not here. And I could imagine a fact pattern where, where the inspections were done really frequently. Once, once a homeowner falls into default, you know, if they're inspecting the property every day or every week or charging a whole lot for those inspections. I could, I can see then, perhaps, a fact pattern that would justify a finding that it, that it's just, they're not reasonable or appropriate. And, and it representing them to be reasonable and appropriate amounts to some sort of a fraud theory, one of your misrepresentation or fraud theories. But, but why here? Why here? Because what we have pled is typical mail and wire fraud. The statute says that if you have a scheme or artifice for obtaining money by means of false pretenses, that is actionable mail or wire fraud, whereas here the mails or wire, wires are used. But what are the false pretenses? The false pretenses are that these charges may be placed by Ocwen on to the mortgage accounts. Here we have pled a classic RICO conspiracy. I'm sorry, I missed something there. The false pretenses here are that charges were placed on the accounts? That... Isn't that what, isn't Your Honor, the contract says that these borrowers are only liable for these fees if they are reasonable or appropriate to protect the lender's interest. We have pled that they were not there to protect the lender's interest. The reason why they are put there is because there's a conflict... It's basically fee churning is what... Yes. Is your claim. It's fee churning. It seems to me that your strongest allegation, and it will be helpful to me if opposing counsel deals with this also, is that the company doesn't actually read the reports, so they keep doing it anyway. And that's paragraphs 65 through 67, and also there are some earlier allegations that are similar. So would you speak to that issue and how that basic underlying claim? Yes, Your Honor. These claims are more than plausible. In part, our complaint is based on the findings of New York's highest regulator, the superintendent of New York's Department of Financial Services, who found, after investigating Auquin, that Auquin had a troubling, tangled conflict of interest with the potential to harm borrowers and to unduly force the borrowers into foreclosure. He specifically explained that because the same man, William Irby, owned both Auquin and Altersource, who's the company that's going out and ordering these fees, that there was an incentive and also the ability of the management of Auquin to use Auquin for the purpose of driving up Altersource's share price, because the same man was chair and controlled both. And there's the fraud. These... No, no. There's the potential. That's the sort of found... We understand that factual, troubling factual scenario. We're asking a different question. Why in this case does it amount to fraud? Because here, they weren't charging an exorbitant amount, right? And according to... Getting back to Judge Graber's question, as long as they were reasonable or appropriate to protect the lender's interests, they were fair game, right? Your Honor... And I think her question really goes to the to protect the lender's interest. After all, if nobody's reading the reports, how can they really be generated to protect the lender's interest? I think that's what she's getting at. And it also gets to your point about, you know, what if... What if the house is no longer there, and they just keep coming out to inspect and adding the fees, and if no one's actually reading the reports, they wouldn't know that. That's exactly right. And the explanation for why that is are the findings. The explanation for why would these be compulsively ordered, regardless of the circumstances, regardless of the facts, the explanation is because of this troubling conflict of interest, and therein lies the fraud. Well, I'm not sure... If they were actually reading and using this information, I'm not sure that the automatic nature of it would be fraudulent in any way. I mean, it's... The lender and the servicer have a right to know whether the property is being occupied, and what kind of condition it's in, and if they want to do that monthly. I'm not sure why that's fraudulent. I guess what disturbs me about it is your attention, and therefore, there's nothing that the lender is gaining other than money. No information. That's correct, Your Honor, and that is fraud, and if I... How do you know that they're not reading them? That is... Well, for example, we have alleged that Mary Lou Vega had a... She had consecutive days. They went out one day, and then they went out the next day, and so we know from that that that there's no possible use of going out there on consecutive days. We also know... But that doesn't show they're not reading the report, and Judge Spivey's asking that question. Yeah, you allege that they're not reading the reports. How do you know that they're not reading the reports? It's based on the computer system that Aukwin leases from AltaSource, that this is set up automatically, and they're just automatically directed to go... That doesn't tell me that they're not reading the reports. Your Honor, the system is set up in order to... It's... It is at this point a fact issue. Is it set up in a way that they can't read the reports? In other words, you're telling us how the system automatically generates the reports. We understand that. How do we know that on the receiving end, the reports aren't being read? I get... I get lots of things that are automatically generated. I get bank statements. I get... I get bills. I get all kinds of things. Some of them I read, some of them I don't. They're automatically generated. That doesn't mean that I'm... that I'm... Just because they're automatically generated, that we're not reading them. Your Honor, the point... Okay, the point of the report would be that if you see that, okay, this property is fine... You still didn't answer my question. How do you know that they're not reading the reports? Do you know of any report that they weren't reading? Upon information and belief. Because we know... Does information and belief satisfy your responsibility under Rule 9b? Your Honor, these pleadings... We have specifically pled that they're not automatically set out to simply... to turn out these fees without anyone paying any attention to them. And if they were... if they were read, for example, then they wouldn't be automatically reordered. Why not? Why not? Because someone would say, the house is in perfect condition. Yes, but it might not be a month later. I don't understand that allegation at all. I'm from Las Vegas. We had lots of instances of people ripping fixtures off the wall once they went into default on their mortgages. They're underwater, tearing things apart. We have irrigation because we're a Southwest community. Pipes break and water spills and people get charged for things. There's lots of reasons why a responsible landlord might want to come out once a month just make sure everything's okay. Your Honor, at this point, this is a fact issue and we are at 12b-6. So fraudulent intent is not something that can be resolved at the 12b-6 level. I can if the allegations don't plausibly support an inference. And you have to plead with specificity. Your Honor, we have identified the continuing ongoing organization. We've cited the 10k of all the sources. Still haven't answered my question to my satisfaction counsel as to what evidence you have that the reports are not being read. The fact that they're ordered on back-to-back days. The fact that Mary Lou Vega was in contact with them saying, I'm living in the house, I'm here. Sure, that's wonderful. Why don't they have a right to come out the next month? A responsible landlord might choose to just drive by the house. Make sure it looks like it's still like the lights are still on. Your Honor, under the Fannie Mae investment guidelines, even if they did that, they're not supposed to repeatedly put these charges on the borrower's account. After the Walker case, two years later, Fannie Mae changed its rules repetitively. You can't charge the borrower for it. So they are exceeding their authority under the loan agreement by repeatedly charging the borrower for these inspections. Are they in violation of Fannie Mae regulations? That's, we're not saying that they're in violation of Fannie Mae regulations, but they're saying that it goes to their intent. They've set up a system where they are passing, systemically, passing on charges to these borrowers that they can't put on the borrower's account. And they're doing that because they have a conflict of interest or someone's making money off of it. The frequency of most of these, other than the one example where people appeared, where an inspector appeared to come by on adjacent days, but the frequency is largely monthly, is that correct? I think largely, but not necessarily. There's another example, I think. And the charges was how much? $10, right? Yeah, they were just driving by. Yeah, $10, okay. And your clients, your clients are in utter default on their mortgages, most of which were well over $1,000 a month, and in some cases even much more than that. Actually, Your Honor, client Saffold Sanders did make a $2,200 payment, and instead of applying all of that appropriately to her loan, money was taken from that payment and applied to the repetitive inspections, even though the investor guidelines say that that's not appropriate. $10 a month would have been $220 months, a long time. I'm sorry, Your Honor. At $2,200, if she made a $2,200 payment... I'm sorry. And went to the inspections first, that would be 220 months worth of inspections. I'm sorry, Your Honor. I didn't mean to say that it all went to that. $63 of it went to that. $63, and the rest of the $220 that she was in default in every month. Your Honor, may I back up to the procedural disposition of this case? I understand that the panel has questions about the facts and the level of proof, but the fact is that we're still at the pleading stage. So you're asking me for proof, however, under circuit precedence, we have... We're asking you for plausibility of the allegations, because if the allegations don't add up to the torts that you're claiming, then the claim... So that's why we're asking the questions, to determine whether the allegations create a plausible inference. Yes, Your Honor. I believe that they do, because we have a conflict of interest that has caught the eye of regulators. It's not us making it up that the same man controls both companies. It's not us using Aquin to run up business for Altasource. This is... We are quoting in the record, pages 79 and 80 of our record excerpts, we're quoting the findings of New York's regulator, the superintendent of the Department of Finances of New York. So of course that is plausible. It is... He specifically said that this is... That we understand that, but just... You're making an allegation of fraud, and so you know the particularity requirement. And so what you've done is sort of set the stage to explain how that could be happening here. But how did these facts get you there? The facts pled, and we've... Okay, we've explained that. Since Altasource was spun off in 2009, what... There's a contractual relationship whereby Aquin is committed to giving this business to Altasource. We have pled that. And so here there's a contractual relationship, and an incentive, and a finding by the New using its mortgage service business to increase the share of Altasource. I'm... Almost out of time. Almost out of time. Would you want me to keep answering questions? I think if you've answered Judge Kristen's question, we'll give you an extra minute to add to your remainder of time for your rebuttal. Thank you, Your Honor. Good morning, Your Honors. Catalina Bergara on behalf of defendants here. Your Honors have asked the... Really the question that you should be asking, what is the fraud here? And I think it's telling... Could I interrupt you? Forgive me. Right at the top, but that's not what the district court relied on. The district court relied on a contract theory. Do you agree that this... It is possible under the facts of this case that there could be a plausible tort theory? We do not, Your Honor. Under the facts of this case, there is no plausible tort allegation. And the fraud-based claims that plaintiff has alleged all require some showing, all include some element that requires a pleading of some fraud or deceptive conduct. That's a different point. So... And I think I just didn't ask a good question. But what I'm getting at is the district court order. The district court was of the view that this had... It was either a contract claim or was nothing. Or nothing. And they came back and amended and they didn't plead a contract claim and then their complaint was dismissed. And so my question is, could there be torts under this kind of scenario? Was the district court right that it had to be a contract claim? Under these facts, yes, it had to be a contract claim. Why? In theory, I mean, suppose there are factual allegations in here that people were overheard saying, this is such a great moneymaker. We never read these things. And it's just a fabulous source of income. And boy, are we hoodwinking these folks. Why isn't it at least possible that even though there's a contractual basis for the charging of reasonable and necessary, reasonable and appropriate, whatever the phrase is, that there could be fraudulent intent or fraudulent charges? There could be fraudulent intent, but that does not a fraud or a fraud-based claim make. There still has to be... Different question. The question was, is the district court right that it had to be a contract claim or nothing? Under these circumstances, yes, because there was no deception, no fraud perpetrated on these borrowers. But there could be. There could be. There could be in theory under a different factual scenario. If you had mislabeling, for example, as there are in these other cases that have made it past the pleading gate, or if you had misrepresentations made about the frequency with which the property inspections were being charged, but those facts are not present here. So the theory that the district, if I understand your answer, the theory on which the district court relied was incorrect, but it reached the right result. Is that what you're telling us? Yes, Your Honor. We, we, yes, Your Honor. Here, there is no deception. And I think it's telling when you asked counsel what the fraud is here. The answer came back repeatedly to the intent. What Your Honor characterized as the troubling scenario, the backdrop. But there is nothing that then converts that into a fraud or a fraud based claim. In your view, are the, are the allegations in paragraphs, I think it's 65 to 67 concerning failure to read the reports that come in. Are those plausible? And, and if not, why not? They're not, Your Honor, because they're based on nothing. There's, there's nothing beyond, as counsel described, information and belief to support the naked allegation that the reports were not read. And... They weren't read. What if she had something, what, whether, what if she had overheard a conversation to that effect that the reports weren't read? After all, the, the contract says that these are authorized as long as they're reasonable, appropriate to protect the lender's interests. And if they're not being read, it's pretty tough to argue that they're really being the lender's interest, isn't it? Yes, Your Honor. But, you know, under Walker, on, on these facts where they're being assessed monthly, they're, they still would not be unreasonable. Walker, in, in Walker, the California Court of Appeal found... Really? Even if they aren't being read? In Walker, they were generated automatically as they are here. That's a different question. I keep saying that's a different deal. And if they're really not being read, and I, I take your point that you think that they don't have the ability to, to plead in good faith that, that, that they're not being read on information and belief. But, but what if they weren't? What if they weren't? If they weren't being read, then plaintiff might have a plausible claim that they were not reasonable or appropriate under the contract. In our view, that would be a contract claim. Well, but if, but given these other allegations, the, the backdrop, the, the conflict of interest backdrop, that wouldn't, wouldn't that be just classic featurening for no reason? We have a hook to get money out of people every month. We pay no attention to these things whatsoever. I don't understand why that wouldn't also potentially be a tort claim. There still would be no misrepresentation, though, in that case. What would the misrepresentation there be? Well, they're not, the misrepresentation, I think, to play devil's advocate is that the, would be that they're being generated to protect the lender's interests. So what if they were being generated every week? Or every day. Or every day or, you know, charging an unreasonable amount. Forget the amount because that kind of changes the, the hypo. But, but if they really weren't being read or if they're really being done unreasonably frequently, then it'd be pretty tough to say that they're really being done and those charges are being added for the sake of protecting the lender's interests. It would be hard to argue that. We still think, though, that under that scenario, that that would be a breach of contract claim. If you're talking about whether it's reasonable, appropriate, necessary to protect the lender's interest, all of that is rooted very firmly in the language of the contract between these. It is, but if the only reason that the inspections are being done is to generate money and they are not used at all for the purposes that are contractually allowed, I don't understand why that can't be a tort claim as well. It's hard to see why the, the contract cause of action would not be enough to make plaintiffs whole in that scenario, Your Honor. If, if the allegation was. That isn't really the question, though, because people can plead many theories to get a single amount of recovery. It's just because you could get recovery under another theory doesn't mean that all other theories are barred as a matter of law. Where the theory is very common. That's Robinson Helicopters. Yes, Your Honor, where the theory here really is not that states nothing beyond the fact that these fees were not reasonable or necessary under the contract. We think that the contract claim would be enough for plaintiffs here. But yes, there are plausible scenarios under which if there were misrepresentations or if the inspections were not reasonable or necessary to protect the lender's interest and there were some misrepresentation to that effect that there could be a tort-based theory that would be viable. But that's, those are not the facts here. And plaintiffs haven't alleged enough to, to convert what is a breach of contract claim into a tort-based claim in this case. You don't think they've alleged an independent duty? No, we do not. There is, yeah, they haven't alleged an independent duty and they haven't alleged, again, to the different question that I keep coming back to, they haven't alleged that there was any misrepresentation here made to, to plaintiffs. There was no mislabeling, unlike in the other cases that have made it past the pleading gate. The Stitt case, there, the property inspections were labeled delinquency expenses. In the Ellis case against J.P. Morgan, they were labeled miscellaneous fees or corporate advances. In the Young case versus Wells Fargo, they were labeled other charges. And in Serino, they were labeled fees due. Here, they were labeled property inspections, monthly, to put borrowers on notice that these were being assessed, that they were property inspections, and also to put them on notice of the frequency of the property inspections that were being ordered. Under that scenario, there really is no fraud. The other thing... There's no mislabeling. There's, there's no mislabeling, yes, Your Honor. It gives them the possibility, counsel, and that's the point I'm trying to make, that I think goes unanswered, and maybe we don't need to reach it today, but it does leave up from the possibility, even if they're correctly labeled on the monthly statement, that, that it could be in a different case, perhaps, that these are generated for reasons other than protecting the lender's interests if they're done unreasonably frequently or, or, or an excessive expense is being charged. Yes, Your Honor, and, and, Your Honors, the panel need not reach that question on these allegations where there's not more to substantiate the naked allegation that plaintiffs have made. Does the record tell us what the status is of the investigation? I think it was an investigation in New York. Uh, no, it does not, Your Honor. No, and, and to that point, Your Honor, um, plaintiffs make much of the investigation in their amended complaint, in their brief, and noted it before the court. Uh, to the extent that there's some concern about this investigation, that's something that, obviously, from what, uh, counsel has represented and from the allegations, is being addressed by regulators. There's no need for plaintiffs to stand in the shoes of regulator to... regulators to vindicate those rights. Unless Your Honors have any other questions? I don't believe we do. Thank you, Your Honors. Counselor, you have a minute and a half. Approximately. Your Honor, we have plausibly pled intent and that the intent of the way this entire system was set up was not to benefit the lender but was to benefit Ocwen and Altersource. Because the entire system was set up to routinely violate the Fannie Mae Service Guideline. They set the system up like that. They can, if they want to, have as many inspections as they want. They can go out every day and inspect. But what they're not allowed to do is to put these charges on the borrower's accounts. And they can't do it if they're repeatedly, without consideration of the particular circumstances, putting the charges on the borrower's account. And they set up the system so that the system automatically, without consideration of the particular circumstances... When you say the particular circumstances, you mean that they should know that your clients are responsible in taking care of the house and therefore they don't need to come back as frequently? That could be one of the circumstances. What it means is that there is actually a consideration of this loan of this circumstance. And here, there was no consideration because the system is... So you're saying that Ocwen can't have a policy of saying, as long as people are not making their mortgage payments that are in default, our policy is to send somebody around once a month to make sure that everything looks like it's the lawn's getting mowed and the... They can do that. But they have to absorb that cost as part of what they're, as part of, they're getting paid to service these loans. And so there are costs that they have to absorb and there are costs that are being put on the borrower's account. If this does not meet the definition of reasonable or appropriate to protect the lender's interest, then it cannot be placed in the borrower's account. And if all they're doing is routinely, without regard to the specific circumstances, ordering this, and we have pled intent to commit fraud, to make money by an ongoing enterprise, to falsely tell people that these are charges that their mortgage, that they must pay, when in fact these are not charges that they must pay.
judges: Graber, Bybee, Christen